**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00156-TWP-MJD |
| | ) | |
| AUSTIN LEN STEVENS, | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a Motion to Suppress, filed by Defendant Austin Len Stevens ("Stevens") (Filing No. 54). Stevens is charged in a Superseding Indictment with Possession with Intent to Distribute Methamphetamine, Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possession of a Firearm by a Convicted Felon (Filing No. 44). He seeks to suppress a statement made by him during a traffic stop before being read his *Miranda* rights and all items discovered in the subsequent warrantless search of his vehicle. He also requests an evidentiary hearing. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court finds that a hearing is not necessary, states its findings of fact and conclusions of law and **denies** the Motion to Suppress.

## I. FINDINGS OF FACT[1]

The facts are not in dispute and most of the events are recorded on the officers' dash and body worn cameras. On the morning of June 24, 2025, Indianapolis Metropolitan Police Department ("IMPD") detectives with the southwest violent crime task force and violence reduction team were conducting surveillance on Austin Stevens, who officers knew to be driving

[1] To the extent that any findings of fact should be considered conclusions of law, they should be deemed to be such.

a white Mercedes sedan bearing license plate DLX275 (Filing No. 55-1 at 1). Two IMPD officers began following Stevens in their unmarked vehicles and they observed Stevens commit several traffic violations, including turn signal, lane, and speeding violations. *Id*. A third IMPD officer, also in an unmarked vehicle, observed Stevens using his cell phone and swerving out of his lane, almost hitting the officer's vehicle. *Id.*

Three uniformed IMPD officers, each in a marked vehicle, conducted a traffic stop with the assistance of the unmarked officers. One of the uniformed officers, Detective Jonathon Willey ("Detective Willey"), activated his lights and sirens (*see* Manually filed body-worn camera video, Exhibit B, at 00:30; Filing No. 56 ("Body Cam")). Stevens stopped his vehicle near the middle of the roadway on the 6600 block of West Washington Street. *Id.*; (*see* Manually filed dashboard camera video, Exhibit C, at 00:28; Filing No. 56 ("Dash Cam")). Detective Willey then observed Stevens turn his tires to the right and momentarily begin to accelerate, which Detective Willey understood to be an attempt to flee (Dash Cam at 00:32–00:34; Body Cam at 05:36–05:42, 07:22–07:24, 08:57–9:04). However, IMPD vehicles were in the way, and Stevens again stopped his vehicle. *Id.*

Detective Willey ordered Stevens to roll down his window, throw his keys outside, exit the vehicle, and raise his arms (Body Cam at 00:45–00:59). Stevens complied. After Stevens exited the vehicle, he began to walk toward Detective Willey with his arms up (Dash Cam at 00:44–01:06). While Stevens was walking, Detective Willey asked him, "Any weapons, any weapons?" (Dash Cam at 01:07–01:09; Body Cam 01:08–01:10). Stevens responded, "In the car." (Dash Cam at 01:10; Body Cam at 01:10–01:11). Detective Willey proceeded to place Stevens in handcuffs. Detective Willey knew Stevens to be a "serious violent felon" under Indiana law. Ind. Code § 35-

47-4-5(a)–(b). Indiana law prohibits a serious violent felon from knowingly or intentionally possessing a firearm. *Id.* § 35-47-4-5(b).

While cuffing Stevens, Detective Willey asked as a follow-up, "Not on you? No weapon on you?" (Dash Cam at 01:25–01:29; Body Cam at 01:25–01:27). Detective Willey then started to walk Stevens to a sidewalk (Dash Cam at 01:50; Body Cam at 01:50). An officer asked Detective Willey, "You want me to go ahead and do [a K9 search] now?" Detective Willey responded, "Uh, well he [Stevens] said there's a gun in the car. He's, he's SVF [serious violent felon]. We're good." (Body Cam at 01:53–01:58).

Detective Willey returned to Stevens' vehicle, secured the keys, and stated that he was moving Stevens' vehicle "for traffic purposes" (Body Cam at 02:27). When Detective Willey entered the vehicle, he observed a firearm in the driver's door panel (Dash Cam at 02:30; Body Cam at 02:30–02:40). He proceeded to move the vehicle off the roadway (Dash Cam at 2:30–2:56). Detective Willey returned to Stevens on the sidewalk and read him his *Miranda* rights (Body Cam at 04:10–04:25).

A few minutes later, Detective Willey asked the K9 handler officer if he "want[ed] to run [the K9] just in case" even though they believed they already had probable cause for the search. The K9 handler declined (Body Cam at 08:24–08:32). During the warrantless search of the vehicle, officers recovered the firearm, methamphetamine, a digital scale, a pill bottle, suspected heroin, a smoking pipe, sandwich bags, and a cell phone.

On July 22, 2025, Stevens was indicted by a federal grand jury and charges with Count 1: Possession with Intent to Distribute Methamphetamine; Count 2: Carrying a Firearm During and in Relation to a Drug Trafficking Crime; and Count 3: Possession of a Firearm by a Convicted Felon (Filing No. 1). On August 19, 2026, a federal grand jury returned a Superseding Indictment

charging Stevens with the same offenses, plus an enhancement on Count 1 (Filing No. 44). Stevens now moves to suppress his statement to Detective Willey and all evidence recovered from the search of his vehicle. Stevens has requested an evidentiary hearing; however, he raises no factual disputes and does not challenge the accuracy of the information articulated by law enforcement in the Probable Cause Affidavit.

## II. CONCLUSIONS OF LAW

### A. Need for a Hearing

A district court is not required to conduct an evidentiary hearing on every motion to suppress. The Seventh Circuit has explained that, "[a] defendant seeking an evidentiary hearing on a motion to suppress must provide sufficient information 'to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) (citing *United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998)). To justify relief, motions to suppress must be "sufficiently definite, specific and non-conjectural" and must be "detailed enough to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion." *Coleman*, 149 F.3d at 677 (*United States v. Rollins*, 862 F.2d 1282, 1291 (7th Cir. 1988)). The Court "must conduct such a hearing 'only if evidence on an issue of fact is necessary to the decision of the motion.'" *Rollins*, 862 F.2d at 1291 (quoting *Nechy v. United States*, 665 F.2d 775, 776 (7th Cir. 1981)).

Because Stevens requested the hearing, he "[bears] the burden of showing that there were disputed issues of material fact necessitating an evidentiary hearing." *Id.* Stevens has failed to meet that burden. His assertion that suppression is required based on insufficient *Miranda* warnings is a purely legal question, and he has not raised any disputed issues of material fact. Stevens has elected not to provide sworn facts, and the only evidence he offers is the probable cause affidavit

and footage of his arrest, which are undisputed. Because there are no material factual disputes, an evidentiary hearing on the Motion to Suppress is unnecessary.

**B. Motion to Suppress**

Stevens asks that the Court suppress his statement about the firearm and all evidence discovered during the search of his vehicle (Filing No. 55 at 6). On a motion to suppress, a "defendant who seeks to suppress evidence bears the ultimate burden of proof and persuasion in making a prima facie showing of illegality." *United States v. Barrera-Martinez*, 274 F. Supp. 2d 950, 955 (N.D. Ill. 2003).

The Court addresses Stevens' statement and the evidence from his vehicle in turn.

**1. Stevens' Statement**

Stevens argues that by the time Detective Willey asked him about weapons, the traffic stop had progressed to an arrest and detention, and Detective Willey's question was an interrogation. Detective Willey's failure to advise Stevens of the *Miranda* warning therefore violated his Fifth Amendment rights, and his statement to Detective Willey is inadmissible (Filing No. 55 at 4). In response, the Government does not dispute that Stevens was subjected to a custodial interrogation, or that he was not advised of his *Miranda* rights before being asked about having weapons. The Government instead argues that Stevens' statement should not be suppressed because it falls under the "public safety" exception to *Miranda* established in *New York v. Quarles*, 467 U.S. 649 (1984).

The *Miranda* warnings provide a procedural safeguard to protect a suspect's privilege against self-incrimination during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 477 (1966). But under the public safety exception, police officers may ask a suspect questions without first giving *Miranda* warnings if they reasonably believe it is "necessary to secure their own safety or the safety of the public." *Quarles*, 467 U.S. at 659.

In determining whether Detective Willey reasonably believed that his question to Stevens was "necessary to secure [his] own safety or the safety of the public," the Court considers all circumstances. *Quarles*, 467 U.S. at 659. The Court starts with Detective Wiley's prior knowledge of Stevens, and Stevens' conduct during the stop. Detective Willey knew that Stevens had been previously convicted of a "serious violent felony" under Indiana law. While "serious violent felony" includes a variety of offenses, and there is no evidence that Detective Willey knew the details of Stevens' prior conviction(s), Detective Willey still knew that Stevens had been convicted of being a serious violent felon.

Additionally, at the start of the traffic stop, Detective Willey observed Stevens attempt to flee. Even though Stevens later complied with Detective Willey's orders, his initial attempt to flee would have reasonably indicated to Detective Willey that Stevens may pose a risk or engage in future non-compliance, especially considering that Stevens ceased his attempt to flee only because he was blocked by IMPD vehicles. *See id.* at 657–58 ("We decline to place officers . . . in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings . . . but possibly damage or destroy their ability to . . . neutralize the volatile situation confronting them.").

The Court also considers the time and place of the stop and the risks to public safety. Stevens was pulled over mid-morning on a weekday, on a busy, five-lane stretch of West Washington Street. The footage of the incident shows traffic steadily driving past Stevens and the officers throughout. And the specific location of the stop is near several stores and restaurants and not far from Interstate 465.

Given Stevens' known criminal history, his attempt to flee, and the number of nearby officers and civilians, Detective Willey's question was reasonably prompted by a concern for his safety, the safety of nearby officers, and public safety.

When asked about weapons, Stevens had not yet been physically detained or handcuffed and was approaching Detective Willey. *See United States v. Are*, 590 F.3d 499, 505–06 (7th Cir. 2009) (affirming decision to admit defendant's un-Mirandized response to question about weapons in the house, where officers knew defendant had a prior weapons conviction and was involved in drug trafficking, defendant was found in his family home rather than a public place, and nine officers were present to conduct a protective sweep); *United States v. Edwards*, 885 F.2d 377, 380 (7th Cir. 1989) (affirming admission of defendant's un-Mirandized response to whether he had a gun, despite defendant already having been patted down and handcuffed and a prior search of defendant's vehicle uncovering no weapons or contraband); *United States v. Williams*, 181 F.3d 945 (8th Cir. 1999) (affirming admission of handcuffed defendant's un-Mirandized response to "anything we need to be aware of?" during execution of search warrant at defendant's apartment). Under the circumstances here, it was reasonable for officers to believe that Stevens might have a concealed weapon on his person, or in his nearby vehicle, and could have used that weapon against officers in another attempt to flee, amid dozens of passing civilians.

The Court finds that Detective Willey's inquiry was limited to securing the safety of himself, officers, and the public. It did not refer specifically to any type of weapon or any particular location, and it did not demand details; it was a yes-or-no question as to whether Stevens had any weapons. His question does not appear to have been "designed solely to elicit testimonial evidence from a suspect." *Quarles*, 467 U.S. at 659–60. It instead appears to have resulted from Detective Willey "follow[ing] [his] legitimate instincts when confronting situations presenting a danger to

the public," which is precisely the type of question the public safety exception permits. *Id.* The Court concludes that the public safety exception to *Miranda* applies to Detective Willey's question, "any weapons?" Stevens' response "in the car," is therefore admissible under *Miranda*, and his motion to suppress that response is **denied**.

**2. Search of the Vehicle**

Stevens also moves to suppress all evidence uncovered from the warrantless search of his vehicle (Filing No. 55 at 5–6). He argues Detective Willey had no authority to move his vehicle, which led to the plain-view discovery of the firearm, and that officers had no authority to search the vehicle incident to his arrest because his arrest was based on statements that are inadmissible under *Miranda*. *Id.* The Government responds that the evidence from the vehicle is admissible because: Detective Willey had authority to move the vehicle to stop obstructing traffic; officers had probable cause to search the vehicle based on both Stevens' statement and Detective Willey's plain-view observation; the inevitable discovery doctrine applies; and the "good faith doctrine" applies (Filing No. 62 at 7–11).

**a. Authority to Move Stevens' Vehicle**

The Government contends that Detective Willey was permitted to move Stevens' vehicle to stop it from impeding traffic (Filing No. 62 at 7). The Supreme Court has held that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Stevens does not contend that his vehicle was not impeding traffic. He argues only that that "there is . . . a question of whether Detective Willey had a legal basis to enter Mr. Stevens' vehicle" because "it was the officers' own actions in how they effectuated the traffic stop . . . that caused the vehicle to be in the roadway." (Filing No. 55 at 6). Stevens cites no authority whatsoever

supporting this position. Stevens has therefore not shown that Detective Willey lacked lawful authority to enter and move the vehicle out of the roadway.

**b. <u>Probable Cause to Search the Vehicle</u>**

The Government offers two bases for probable cause to search Stevens' vehicle. First, it contends that officers "developed probable cause when Stevens stated he had weapons in his vehicle, and they knew Stevens to be prohibited from possessing firearms." (Filing No. 62 at 9). However, there is no evidence that Stevens stated he had a firearm. Deputy Willey asked only about "weapons," and the Government fails to explain how Stevens' admission to possession of a weapon, rather than a firearm specifically, creates probable cause.

The Government's second argument—that Detective Willey's plain view of Stevens' firearm while moving the vehicle created probable cause—fares much better (Filing No. 62 at 10). As explained above, Detective Willey was permitted to enter and move Stevens' vehicle, and the Court agrees that the plain-view discovery of the firearm, combined with the knowledge that Stevens is a serious violent felon, was sufficient to create probable cause to search the vehicle.

**c. <u>Inevitable Discovery Doctrine</u>**

In its response, the Government argues that regardless of Stevens' statement to Detective Willey and regardless of Detective Willey's entry into Stevens' vehicle, the evidence recovered from Stevens' vehicle would have inevitably been discovered because a K9 officer was present at the scene, and Detective Willey would have used a K9 sniff test had he believed probable cause was otherwise lacking (Filing No. 62 at 11).

"The inevitable discovery doctrine holds that even an illegally seized item need not be suppressed if the government can prove by a preponderance of the evidence that the officers would have discovered it by lawful means." *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010). "To satisfy this burden, the Government must demonstrate that two criteria are met: First, it must

show that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; second, the Government must demonstrate that it would have conducted a lawful search absent the challenged conduct." *United States v. Marrocco*, 578 F.3d at 637–38 (7th Cir. 2009) (internal citations omitted) (citing *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir.1995)).

The Government satisfies both showings here. The discussions between Detective Willey and the other officers show that absent other probable cause, Detective Willey would have ordered a sniff-test using the K9 already on scene, and, based on the discovery of drugs in the vehicle, the sniff-test would have given rise to probable cause for a search. *United States v. Washburn*, 383 F.3d 638, 643 (7th Cir.2004) ("[W]e have held that a positive alert by a trained drug dog gives rise to probable cause to search a vehicle." (citations omitted)); *Marrocco*, 578 F.3d at 639 (reversing order granting motion to suppress; finding that officers would have inevitably discovered funds and connection between funds and narcotics based on results of dog-sniff test).

### d. <u>Good Faith Exception</u>

Lastly, the Government argues that "the good faith doctrine applies because Stevens identifies no flagrant police misconduct to deter," and "law enforcement appropriately relied on established principles as to their actions, and thus, good faith would apply." (Filing No. 62 at 11). Although the Government does not identify the "good faith doctrine" it invokes, the "good faith" doctrine most commonly referred to in suppression motions is the *Leon* good faith exception that applies to the good-faith reliance on invalid warrants. The *Leon* exception does not apply here. *United States v. Leon*, 468 U.S. 897 (1984). The Government fails to offer any argument or authority in support of its "good faith" argument, except for a general discussion of the purpose of exceptions to the exclusionary rule. *See United States v. Cazares-Olivas*, 515 F.3d 726 (7th Cir. 2008). This argument is perfunctory and undeveloped and is therefore waived. *See M.G. Skinner*

*& Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (Defendant did not provide citation support or substantive argument for his assertion that the DNA Act constitutes a deprivation of property without due process. Therefore, this argument is waived, and we need not address it.).

Nevertheless, Stevens' motion to suppress the evidence from his vehicle is **denied** because there was probable cause to search the vehicle based on the lawful, plain-view discovery of the firearm and because the inevitable discovery doctrine applies.

## III. CONCLUSION

For the foregoing reasons, Stevens' Motion to Suppress (Filing No. 54) is **DENIED**.

**SO ORDERED**.

Date: November 20, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Julie A. Chambers
Julie Chambers CJA Panel Attorney
julie@chamberslawllc.com

Pamela S. Domash
DOJ-USAO
pamela.domash@usdoj.gov